JEWEL MINING COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket No. 99266.   Promulgated March 25, 1941.

*W. E. Baird, C. P. A.*, for the petitioner.
*Gene W. Reardon, Esq.*, for the respondent.

OPINION.

ARUNDELL: The substantial question at issue is the limits to be assigned to the words "the property" as used in section 114 (b) (4) of the Revenue Act of 1934 as partially defined in article 23 (m)-1 (j) of Regulations 86.[1] Dependent on this question is the method by which allowable depletion is to be computed. Petitioner argues, first, that the leasehold acquired on July 1, 1930, is "the property" contem-

---

[1] SEC. 114. BASIS FOR DEPRECIATION AND DEPLETION.

    \*      \*      \*      \*      \*      \*

  (b) BASIS FOR DEPLETION.—

    \*      \*      \*      \*      \*      \*      \*

  (4) PERCENTAGE DEPLETION FOR COAL AND METAL MINES AND SULPHUR.—The allowance for depletion under section 23 (m) shall be, in the case of coal mines, 5 per centum, in the case of metal mines, 15 per centum, and, in the case of sulphur mines or deposits, 23 per centum, of the gross income from the property during the taxable year, excluding from such gross income an amount equal to any rents or royalties paid or incurred by the taxpayer in respect of the property. Such allowance shall not exceed 50 per centum of the net income of the taxpayer (computed without allowance for depletion) from the property. A taxpayer making his first return under this title in respect of a property shall state whether he elects to have the depletion allowance for such property for the taxable year for which the return is made computed with or without regard to percentage depletion, and the depletion allowance in respect of such property for such year shall be computed according to the election thus made. If the taxpayer fails to make such statement in the

plated by the statute, regardless of the later sublease of a portion of it, and that it is correct in lumping together the gross income from its own operations and the royalties received from the sublessee to obtain the base to which the 5 percent depletion allowance is to be applied and in combining the net income from both sources in computing the 50 percent limitation. Respondent argues, to the contrary, that a division of the original property was accomplished by the sublease and that he has properly separated gross and net income from each property in applying both the 5 percent allowance and the 50 percent limitation.

The petitioner argues, alternatively, that, even though the income here be held to arise from two separate properties, it must be sustained in its method of computing depletion under article 23 (m)–1 (j), which allows the treatment of two properties in the same tract of land as a single interest if this practice be followed consistently.

The issue framed by the first contentions has been before us on other occasions, although not in the precise form presented here. In the instance of a single tract of land operated by the taxpayer as a ranch, and granted leases to different operating oil companies under separate leases, we held that the taxpayer had as many separate properties for purposes of computing depletion as he had given leases. *J. T. Sneed, Jr.*, 40 B. T. A. 1136 (on appeal, C. C. A., 5th Cir.). In so holding we followed the prior decision in *Allie M. Turbeville*, 31 B. T. A. 283; affirmed on this point, 84 Fed. (2d) 307, where the taxpayer sought to treat production from several parcels of land, owned by her and leased to operating oil companies, as arising from a single property in order to claim depletion on certain bonuses. There too the separateness of properties covered by different leases in computing depletion was affirmed.

The related situation of an oil company which carried on operations on several pieces of land, some of which it owned and others of which it leased, and claimed depletion on its combined income from these separate properties, was before us in *Vinton Petroleum Co. of Texas*, 28

---

return, the depletion allowance for such property for such year shall be computed without reference to percentage depletion. The method, determined as above, of computing the depletion allowance shall be applied in the case of the property for all taxable years in which it is in the hands of such taxpayer, or of any other person if the basis of the property (for determining gain) in his hands is, under section 113, determined by reference to the basis in the hands of such taxpayer, either directly or through one or more substituted bases, as defined in that section.

ART. 23 (m)–1.  *  *  *

  *    *    *    *    *    *    ●

(j) "The property," as used in section 114 (b) (2), (3), and (4) and articles 23 (m)–1 to 23 (m)–19, inclusive, means the interest owned by the taxpayer, freehold or leasehold, in any mineral property. The taxpayer's interest in each separate mineral property is a separate "property"; but, where two or more mineral properties are included in a single tract or parcel of land, the taxpayer's interest in such mineral properties may be considered to be a single "property," provided such treatment is consistently followed.

B. T. A. 549; affd., 71 Fed. (2d) 420. Separate computation of depletion allowable as to each property was there required. The fact was in that case that the taxpayer had cons.stently treated the several properties as "separate and independent of each other in accounting for its operations on each property."

In face of these holdings the petitioner relies principally on *Mascot Oil Co.*, 29 B. T. A. 652, wherein we held that the sublease by the taxpayer to another of the oil rights below 1,600 feet in a parcel of land on which the taxpayer had leased all mineral rights did not create a separate property for computing depletion.

The cases considered do not point clearly to the conclusion requested by either party. Moreover, it appears unnecessary to decide the question thus framed, in view of the alternative argument advanced by the petitioner. If it be assumed that the mineral interest covered by the sublease is a separate property from that in the acreage retained and operated by the petitioner, claim is nevertheless made to treat these properties as one under article 23 (m)–1 set out above in the margin. The requirements of the regulations here seem to be fully satisfied: The mineral interests operated by the sublessee and the petitioner are "included in a single tract or parcel of land"; and the petitioner has shown consistent practice in treating these interests as one. The respondent, indeed, does not on brief oppose this alternative contention of the petitioner, and we perceive no reason why the present situation does not fall clearly within the provisions of the regulations. The fact of petitioner's consistent treatment of its two interests in the property as a single property distinguishes this case from *Vinton Petroleum Co.*, *supra*. Moreover, the respondent's regulations, No. 69, applicable in that case did not contain any provision permitting the treatment of different interests as a single property.

In *J. T. Sneed, Jr.*, *supra*, certain limitations in applying article 23 (m)–1 (j) were implied from article 23 (m)–1 (b) and thought necessary to the consistent application of these two subsections of the regulations. Thus, it was held that combination of the income from separate properties was not permissible where they were not operated by the taxpayer "as a common enterprise", and the taxpayer, who was engaged in the business of ranching and leased mineral rights in his ranch merely as an incident to that enterprise, was not permitted to lump together income from oil leases covering separate portions of the ranch. The substance of this requirement is that there must be some practical reason for the treatment of the two properties as one and that such a course of action arise not alone from the mere fact of common ownership. In the instant case, the petitioner was engaged in mining operations similar to those of its sublessee, the mining of the

sublease was an integral part of its own business enterprise. There was thus good cause to treat the proceeds from both sources as arising from its own business operations and in these circumstances the petitioner must be sustained in its claim of right to lump together with its mining revenues the income produced from the sublease.

Our decision must accordingly be, as indicated above, for the petitioner.

*Decision will be entered under Rule 50.*